Tommy BENNETT *v.* BLYTHEVILLE CIVIL SERVICE COMMISSION

87-21                                                    733 S.W.2d 414

Supreme Court of Arkansas
Opinion delivered July 20, 1987

*Kaplan, Brewer & Miller, P.A.*, by: *Silas H. Brewer, Jr.*, for appellant.

*Elbert S. Johnson*, for appellee.

STEELE HAYS, Justice. When a captain of the Blytheville Fire Department was promoted to the rank of chief, a vacancy was left in the Office of Captain. Lt. Tommy Bennett, appellant, and Lt. Jerry Summers applied. Both had been with the department since about 1971, Bennett being senior to Summers by about a year.

The Blytheville Civil Service Commission explained the procedures to Lts. Bennett and Summers—they would undergo a written examination prepared by the Fire Academy which would be given a weight of 60%, an oral examination weighted 20%, and a departmental evaluation weighted 20%.

The results of the examinations and evaluations were very close—Bennett scored 48 on the written exam, 76.5 on the oral and 79 on the departmental evaluation, for a combined total of 59.9. Summers scored 41 on the written exam, 91.5 on the oral and 86 on the evaluation, for a total of 60.1. The names were certified according to the test results to the chief, the mayor and the city council and Lt. Summers was selected. Lt. Bennett appealed to the circuit court and the Commission was affirmed.

On appeal to this Court Lt. Bennett contends, first, the circuit court erred in sustaining the promotion of a fire department employee whose score on the written examination was lower than his and, second, the process of promotion did not include

examinations with fair, impartial and measurable standards, capable of judicial review, as required by the controlling statutes.

## I

Citing *Bradley* v. *Bruce*, 288 Ark. 342, 705 S.W.2d 431 (1986) and *Booth* v. *Baer*, 263 Ark. 213, 563 S.W.2d 709 (1978), appellant argues that because he scored above Lt. Summers on the written examination it was incumbent on the Commission to certify him for promotion under the provisions of the Civil Service Act, Ark. Stat. Ann. §§ 19-1601 through 19-1618 (Repl. 1980).

■ We find nothing in our civil service statutes suggesting that the choices for promotion must be based solely on written examination. Section 19-1603 (9th) states only that promotion shall be based upon "open competitive *examinations* of efficiency, character and conduct[.]" (Our emphasis).

■ In *Bradley* we emphasized that § 19-1603 requires that promotion eligibility be based entirely on examination, and we said, therefore, that seniority could not be considered. We did not there, and we do not here, specifically eliminate oral examination as a means of evaluation. We say only that it must be capable of objective grading and review. Seniority was not a factor in the selection of Lt. Jerry Summers. Nor does the *Booth* case reach such a result. The selection process in *Booth* used this point system:

| | |
|---|---|
| Written test | 40% |
| Seniority | 20% |
| Oral Examination | 20% |
| Rating by Chief | 10% |
| Rating by Supervisor | 10% |
| TOTALS | 100% |

However, it was not an oral examination that was criticized in *Booth*, but the fact that the oral examination was delegated to a panel of examiners chosen by the Little Rock Civil Service Commission without the prior adoption of a rule establishing such a procedure. The process was further flawed because only two of the three panelists actually participated in the oral examination. While other deficiencies were noted in *Booth*, the use of oral examinations as part of the testing process was not faulted in the

*Booth* opinion.

█  In contrast, the use of an oral examination and department evaluation was approved by Article 16 of the Rules and Regulations of the Blytheville Commission enacted in accordance with the Civil Service Act. In *Amason* v. *City of El Dorado*, 281 Ark. 50, 661 S.W.2d 364 (1983), we held that civil service regulations promulgated in accordance with the act, which adopted testing procedures not prohibited under the act, had the effect of law. (Ark. Stat. Ann. § 19-1603). Nothing in the act prohibits the use of oral examinations in the selection process and the circuit court was right to sustain the Commission on this argument.

## II

The circuit court found, correctly, that the selection process by which Lt. Summers was certified above Lt. Bennett was fairly and accurately made, free of favoritism, politics or other impropriety. Certainly nothing in the record suggests otherwise, and appellant readily concedes the fairness of the selection process. In fact, on an earlier list, which had expired, Lt. Bennett was at the top. Even so, we are compelled to sustain the appellant on his second argument—that the oral examination and the departmental evaluation, while appropriate in themselves as constituents of the selection process, were conducted in a manner which failed to provide measurable criteria for reviewing the selection process. In *Booth*, we said oral examination required the establishment of measurable standards and cited language from *Almassy* v. *Los Angeles County Civil Service Commission*, 34 Cal.2d 387, 210 P.2d 503 (1949):

> To be sure, there must be measurable standards established for determining the general proficiency of the candidates for the particular position, but the fact that such standards were subjective rather than objective does not prevent the classification of the 'oral interview' as a 'competitive' examination. The various aspects of the personality factors, as previously determined by the commission to be 'necessary and important' to the position to be filled, were itemized for consideration by the examiner as the measuring rod and guidepost in his evaluation process as to the personal fitness of the candidate, so that it cannot

be said that there was no effective common criterion of base topics underlying the comparative ratings.

That precedent, rendered nearly ten years ago, is binding.

The proceedings relative to the oral examination were described as follows: a promotion cycle required testing for a captain, a lieutenant and a driver. Four of the five commissioners assembled to give the oral exam, consisting of ten questions:

1. In fire related work, how would you describe the Chain of Command and how important is it?

2. Do you consider longevity a requirement for promotion? Why?

3. How do you feel about public relations to the Fire Department? What is Public Relations?

4. While you are on duty, in the event of a serious fire where a person has died of suffocation, who must be notified?

5. What is the procedure for responding to out of town fire calls?

6. You are responding to a fire call in a fire vehicle and your vehicle hits a child. What do you do? Who must be notified?

7. This is a two part question:

   A. An alarm was called in that a house fire had occurred at 419 E. Sycamore. What is the best route to use from the *Main* fire station?

   B. What is the best route from the main fire station to 522 W. Locust Street?

8. This is a two part question:

   A. An alarm was called in that a house fire had occurred at 1820 Brawley street. What is the best route to get there from the west end fire station?

   B. What is the best route from the west end station to 510 Maple Street?

9. You are seeking promotion to (Capt., Lt., Driver). What are the major responsibilities of that position?

10. Why do you think you are deserving of a promotion at this time?

The same ten questions were asked each applicant for the three positions. There was no job description or written documentation of the qualifications for any position, nor any consultation among the commissioners concerning appropriate answers to any of the questions. The answers were not recorded, nor were any memoranda of the responses preserved.

We have no objection to the questions, or with the identical questions being posed to the candidates for promotion to captain, lieutenant and driver. The problem with the oral examinations and the departmental evaluation is they fail to provide any method by which the grading of the examiners can be given even a perfunctory review. We are left with a single option, i.e., unquestioning acceptance of the subjective judgment of the examiners as to the qualifications of the applicants. That fails to comport with the holding in *Booth* v. *Baer, supra*, and must be disapproved.

■ The oral exam and departmental evaluation must be conducted so that some reasonable means for judicial review is possible to insure that the examiners have not been guided entirely by their own subjective discretion. That would require, at a minimum, some prior conceptions of the qualifications for the position being filled, the ideal responses to the questions posed and some memorandum of the results besides scores. The departmental evaluation, too, must reflect more than simply the conclusions of the supervisors. We do not propose to become involved in the selection process, but merely to discharge the duty of providing the independent review placed on the judiciary under the law, to see that the process is fair and impartial. To do that we cannot rely by faith on the judgment of the examiners.

On remand the oral and departmental evaluation of Lts. Bennett and Summers should be conducted under methods which preserve the procedures followed for review.

Reversed and remanded.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I concur to simply point out that we cannot write or rewrite the law. The legislation, in this case, is not good in my judgment. There should be other criteria considered in promoting policemen and firemen. Leadership and character are hard qualities to determine purely through testing. I doubt if they can be. A person making the best grade may be totally unable to act out the duties of a senior officer.

But we did not make the law, and we are not going to change it (at least, I hope we do not). Those interested, policemen, firemen and civil service commissioners, will have to bring this about. Until other legal criteria are written into the law, we will have to enforce the current law.